UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEMIELI WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01423-SEB-TAB |
| | ) | |
| THREAD EXPERIMENT, LLC Default Entered 7/16/2019, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

Plaintiff Demieli Wright initiated this action against Defendant Thread Experiment, LLC on April 19, 2019, alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*., and its implementing regulations, 28 CFR § 36.302 *et seq*. Defendant filed no answer to the Complaint or other responsive pleading nor defended this action in any way. A Clerk's default was entered against Defendant on July 16, 2019. Now before the Court is Plaintiff's Motion for Default for Judgment [Dkt. 10] against Defendant.[1] For the reasons detailed below, this motion is **granted in part and denied in part.**

**Facts Established by the Complaint**

Plaintiff Demieli Wright is legally blind. Because of his blindness, Plaintiff utilizes a screen reading program known as "JAWS" to access the internet. In simplest

---

[1] Plaintiff appears to have inadvertently filed this motion twice. Accordingly, the second motion for default judgment [Dkt. 13] is **denied as moot.**

1

terms, JAWS "takes visual content and reads the content for the user" so that its users may navigate the internet. [Comp. ¶¶ 2, 3].

Defendant Thread Experiment "is the first ever brand of home bedding dedicated to men."[2] In the operation of its retail business, Defendant owns and manages the website "www.threadexperiment.com." Defendant uses its website to market bedding designed specifically for men. Through the website, consumers may research Defendant's bedding options, learn about bedding basics (for example, the distinctions between thread counts and fabric types), and purchase products. The website also serves as a platform to contact costumer service, to review Defendant's privacy policy, and to watch video demonstrations of various ways to make a bed.

Unfortunately, Defendant's website is incompatible with most screen reader programs, and thus individuals who are blind or vision impaired cannot access www.threadexperiment.com. Indeed, though JAWS is the most widely used screen reading technology on the market, Plaintiff was unable to access or navigate Defendant's website using this program. When he attempted to do so, he was confronted with multiple barriers that rendered the website largely unusable, including product pages that were completely inaccessible as well as links and pop ups that could not be detected by JAWS or otherwise navigated by him.

Plaintiff filed his Complaint on April 9, 2019, seeking to hold Defendant liable for violating Title III of the ADA. A Clerk's default was entered against Defendant on July

---

[2] ABOUT THREAD EXPERIMENT, https://threadexperiment.com/pages/educate.

16, 2019, based on its failure to answer the Complaint or otherwise defend this action. Now before the Court is Plaintiff's Motion for Default Judgment against Defendant.

## Legal analysis

**I.     Liability**

As noted above, an entry of default was entered against Defendant on July 16, 2019. Plaintiff now seeks default judgment against Defendant, pursuant to Federal Rule of Civil Procedure 55(b). "As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff for each cause of action alleged in the complaint." *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993) (citation omitted). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe &* Concrete, 722 F. 3d 1319, 1323 (7th Cir. 1983). Nonetheless, an entry of default judgment is only appropriate if these allegations, along with the other evidence submitted, establish a cognizable claim for relief. *Mortland v. Lights Out Developments, LLC*, 2020 WL 3577867, at *1 (S.D. Ind. July 1, 2020); *Franko v. All About Travel Inc.*, 2014 WL 2803987, at *1 (N.D. Ind. June 19, 2014) ("Default judgment is appropriate only if the well-pleaded allegations of the complaint are sufficient to establish a legal claim.").

Here, we find that the allegations in the Complaint are sufficient to state a cognizable claim for relief under Title III of the ADA.

The ADA's "sweeping purpose" is to "remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75, 121 S. Ct. 1879, 149 L.Ed.2d 904 (2001). It "prohibits discrimination based on disability in major areas of

3

public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604, 607 (7th Cir. 2020) (internal quotations omitted). Title III provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S. Code § 12182(1). Title III identifies various private entities that are considered "public accommodations," including places of lodging, restaurants, places of entertainment, and clothing stores or shopping centers. 42 U.S. Code § 12181(7).

Though the issue of whether websites fall within the statutory purview of Title III appears to be a relatively novel question of law, we are not without some guidance confirming that websites such as www.threadexperiment.com are bound by this statute. For example, in 2018, Department of Justice ("DOJ") Assistant Attorney General Stephen E. Boyd affirmed in a letter to members of Congress the DOJ's position that Title III applies to websites operated by private entities qualifying as "public accommodations." He wrote:

> The Department first articulated its interpretation that ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's title III requirement that goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities.[3]

---

[3] Letter from Stephen E. Boyd, Assistant Attorney General of the Department of Justice, to Congressman Ted Budd (Sept. 25, 2018) (accessible at https://www.adatitleiii.com/wp-content/uploads/sites/121/2018/10/DOJ-letter-to-congress.pdf) (hereinafter, "DOJ Letter to Congress").

4

Although the Seventh Circuit has not yet specifically addressed whether commercial websites must comport with the accessibility requirements of Title III, there is nonetheless significant momentum from district courts across the nation supporting an interpretation of the ADA which mandates such compliance, regardless of whether the website is associated with any physical store. *See, e.g.,Gathers v. 1-800-Flowers.com*, Inc., 2018 WL 839381, at *3 (D. Mass. Feb. 12, 2018) (holding that Plaintiff stated valid claim for relief by alleging that defendant's website was inaccessible to him as blind person); *Gniewkowski v. Lettuce Entertain You Enterprises, Inc*, 251 F. Supp. 3d 908, 915 (W.D. Pa. 2017) (same); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 396 (E.D.N.Y. 2017) (finding that retailer's website was a "place of public accommodation" and noting that "[t]oday, internet technology enables individuals to participate actively in their community and engage in commerce from the comfort and convenience of their home. It would be a cruel irony to adopt the interpretation of the ADA espoused by [defendant.]"); *Del-Orden v. Bonobos, Inc*., 2017 WL 6547902, at *1 (S.D.N.Y. Dec. 20, 2017) (adopting approach of modern case law "that commercial websites qualify as 'public accommodations' within the meaning of the ADA, such that the ADA's protections extend to blind persons who claim discriminatory access to such websites."); *Nat'l Fed'n of the Blind v. Scribd Inc*., 97 F. Supp. 3d 565, 575 (D. Vt. 2015) (holding that a website must comply with the ADA if it falls within any of the general categories of public accommodations listed in the ADA); *see also Laufer v. Lilly Pond LLC Series*, 2020 WL 7768011, AT *1 (W.D. Wis. Dec. 30, 2020).

In issuing these decisions, several of these courts relied on Seventh Circuit precedents holding that the ADA is not limited to physical spaces. In *Doe v Omaha Ins. Co.*, for example, insured individuals brought suit against their insurer, arguing that an AIDs cap in the insurer's health insurance policies violated Title III of the ADA. Though the Seventh Circuit ultimately found that the ADA had not been violated, it nonetheless recognized that Title III "is not limited to physical products, but includes contracts and other intangibles, such as an insurance policy." The Court explained:

> Title III of the Act, in section 302(a), provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation" by the owner, lessee, or operator of such a place. 42 U.S.C. § 12182(a). The core meaning of this provision, plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space) . . . that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do.

179 F.3d 557, 558–59 (7th Cir. 1999) (holding that ADA regulated sale, but not content, of insurance policies).

Two years later, the Seventh Circuit reiterated that "public accommodation" should not be interpreted "literally, as denoting a physical site." *Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459, 2001 WL 1205383 (7th Cir. 2001) ("The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public.").

District courts have relied, in part, on this guidance from the Seventh Circuit in interpreting the ADA within the context of addressing the novel question of law before us. *Andrews*, 268 F. Supp. 3d at 381; *Del-Ordon*, 2017 WL 6547902, at *7; *Scribd Inc.*, 57 F. Supp. 3d at 570. We do the same here and, consistent with the Seventh Circuit's directives that "places of public accommodations" are not limited to physical spaces, join the growing number of courts to hold that Title III of the ADA governs websites that otherwise satisfy the statutory definition of "places of public accommodation" under 42 U.S. Code § 12181(7).

We further find that Plaintiff has sufficiently pled a violation of Title III of ADA by alleging facts that, when taken as true, establish that Defendant is a private entity that owns and operates a place of public accommodation, that is, the retail sales website www.threadexperiment.com, and that Plaintiff was deprived of equal enjoyment of the goods and services provided through www.threadexperiment.com because of Defendant's failure to ensure that its website is accessible to individuals with vision impairments. *See* 42 U.S.C. § 12181(7)(E) ("public accommodations" includes private clothing stores, shopping centers, and other sales establishments); *Andrews*, 268 F. Supp. 3d 381, 396 (concluding that retailer's website was a "place of public accommodation"); *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 575 (D. Vt. 2015) (holding that a retail website falls into one of the "public accommodation" categories is bound by Title III). Accordingly, Plaintiff's Motion for Default Judgment is **granted.**

## II.     Relief

Plaintiff does not seek damages relating to his ADA claims. In fact, he is foreclosed from doing so given that plaintiffs suing under Title III of the ADA may obtain only injunctive relief, not money damages. 42 U.S.C § 12188(a)(2) (providing that violations are Title III are to be remedied through injunctions); *Mortland* , 2020 WL 3577867, at *2 (*citing Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013) (noting that "damages are not available under Title III"). Additionally, injunctions commonly issue as part of default judgments. *Virgin Records America, Inc. v. Johnson*, 441 F.Supp.2d 963, 965 (N.D. Ind. 2006) (citing *Johnson v. Kakvand*, 192 F.3d 656 (7th Cir. 1999)); *see also Mortland*, 2020 WL 3577867, at *2 (issuing permanent injunction as component of default judgment in ADA case).

To demonstrate that injunctive relief is appropriate, Plaintiff must show that: (1) he has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are insufficient to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019) cert. denied, 140 S. Ct. 58, 205 L. Ed. 2d 44 (2019) (noting that a court is generally required to conduct the traditional balancing of equities even though injunctive relief is the only available remedy prescribed by statute).

As previously established, Plaintiff's allegations show that he suffered an injury in that he was subjected to discrimination because Defendant's website is not in compliance with the ADA and thus not accessible to him and others with vision impairments.

8

Without a monetary remedy available, no recourse is available to Plaintiff absent the entry of an injunction, and thus his injury irreparable. *See LAJIM*, 917 F.3d at 945 ("[A]bsent a permanent injunction, a prevailing [Resource Conservation Recovery Act] plaintiff will receive no remedy. The proven harm is, by definition, irreparable absent an injunction."). Additionally, Plaintiff will suffer a continued hardship absent an injunction in that he will be unable to participate as a consumer by accessing Defendant's website.

At the same time, we discern no hardship, beyond incurring certain costs necessary to bring www.threadexperiment.com into compliance with the ADA, that will be suffered by Defendant. Finally, "the public has a strong interest in eliminating discrimination and in enforcing the ADA[.]" *Mortland*, 2020 WL 3577867, at *2 (internal quotations omitted); *see also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (noting that, in enacting the ADA, "Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'") (citing the legislative history of the ADA)). Based on all of these factors, we find permanent injunctive relief to be appropriate.

Federal Rule of Civil Procedure 65 governs the scope and content of permanent injunctions. This rule mandates that every order granting an injunction must: "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." FED. R. CIV. P. 65(d). While an injunction must state its terms specifically, it must also "be broad enough to be effective, and the appropriate scope of

9

the injunction is left to the district court's sound discretion." *Russian Media Group, LLC v. Cable Am., Inc.*, 598 F.3d 302, 307 (7th Cir. 2010).

We have already outlined our reasons for granting injunctive relief, to wit, to ensure that Defendant takes the necessary steps to ensure that its website complies with Title III of the ADA and its implementing regulations. In furtherance of this purpose, Defendant is hereby **ordered** to modify its website, www.threadexperiment.com, to ensure that it is in full compliance with these ADA statutory and regulatory requirements. The full terms of this injunction are set forth in a separate, permanent injunction.[4] Defendant shall have **90 days** from the date of this Order and the issuance of the Permanent Injunction to fulfill the requirements therein imposed. Defendant is further

---

[4] In its Motion for Default Judgment, Plaintiff requests that we order Defendant to comply with "Version 2.0 of the Web Content Accessibility Guidelines." We deny this request for two reasons. First, Plaintiff did not include this request in its Complaint, and we cannot grant broader relief in a default judgment than that which was included in the complaint. FED. R. CIV. P. 54(c). Additionally, the DOJ has declined to adopt these guidelines as a legal standard for evaluating accessibility. *See* DOJ Letter to Congress. We also deny Plaintiff's request that we issue an order authorizing Plaintiff to monitor Defendant's compliance with the permanent injunction for a period of up to two years and to recover any costs incurred as a result of this monitoring, given that no explanation as to why such monitoring is necessary has been provided. Our court retains contempt power over Defendant if it does not comply with the Permanent Injunction for the duration of the injunction's existence, that is, forever, unless and until it is dissolved. Plaintiff may seek to enforce the injunction through contempt or supplementary proceedings, but we deny the invitation to expressly authorize and compensate Plaintiff's monitoring. Additionally, we will not grant Plaintiff's request that Defendant employ ADA compliance expert "ADASure" to assist with the modifications to its website and to periodically audit Defendant's website for a duration of two years, nor will we order Defendant to take certain actions beyond improving the accessibility of its website, for example, training "no fewer than three" personnel to assist customers with disabilities in utilizing the website. As outlined in our Permanent Injunction, Defendant is required to ensure that its website complies with the ADA; however, we will not mandate that it utilize Plaintiff's chosen expert in this task, nor will we order Defendant to do more than what is required by the ADA.

**ordered** to file a Notice of Compliance reporting on its efforts to fully comply with the Permanent Injunction within **90 days** from the date of this Order.

### III.   Attorney's Fees and Costs

The ADA allows the Court, in its discretion, to award a reasonable attorney's fee, including litigation expenses and costs, to the prevailing party. 42 U.S.C. § 12205. Plaintiff, as the prevailing party, may file a petition for costs and fees, no later than **thirty days** from the date of this Order.

## CONCLUSION

Plaintiff's Motion for Default, [Dkt 10], is **granted in part and denied in part**. It is **denied** with regard to Defendant's required compliance with the Web Content Accessibility Guidelines, Plaintiff's authorization to monitor Defendant's compliance with the Permanent Injunction and costs for such monitoring, Defendant's retention of ADASure, and Defendant's modifications to its website and business practices that go above and beyond compliance with the ADA.

Plaintiff's motion is granted in all other respects. Defendant is **ordered** and **permanently enjoined** from operating, utilizing, or maintaining its website unless and until it is full compliance with Title III of the ADA, 42 U.S.C. § 12181 *et seq*., and its accompanying regulations, 28 CFR § 36.302 *et seq.*, which must be accomplished no later than **90 days** from the date of this Order. A failure to achieve full compliance within 90 days will result in a permanent shutdown of the offending website.

The specific scope of the injunction is set forth in a separate, accompanying order. No later than **90 days** from the date of this Order, Defendant is ordered to file a Notice of Compliance with the Court reporting on its compliance with the Permanent Injunction.

Plaintiff's second Motion for Default Judgment [Dkt. 13] is **denied as moot**. Final judgment shall issue accordingly. Plaintiff, as the prevailing party, may file a petition for costs and fees, no later than **thirty days** from the date of this Order.

IT IS SO ORDERED.

Date: _1/22/2021_  

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Noah Cartwright Thomas
CHAPMAN LAW LLC
noah@chapmanlaw.com