UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMIELI WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:19-cv-01423-SEB-TAB |
| | ) |
| THREAD EXPERIMENT, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S PETITION FOR ATTORNEYS' FEES, COSTS, EXPERT FEES, AND LITIGATION EXPENSES**

Now before the Court is Plaintiff Demieli Wright's ("Wright") request for an order awarding attorneys' fees and a reimbursement of costs [Dkt. 21] incurred by him in securing a default judgment against Defendant Thread Experiment, LLC ("Thread") in the above-captioned cause.  This is one of seventeen (17) virtually identical lawsuits filed by Wright in this district, each seeking injunctive relief as well as an award of damages against various defendants whose respective websites, like Thread's, allegedly violate Title III of the Americans With Disability Act (42 U.S.C. § 12101 *et seq.*) based on their technological incompatibility with screen reader programs utilized by individuals with visual impairments, such as Wright, to access the materials displayed thereon.

This lawsuit was filed on April 9, 2019; service of the Complaint/summons was accomplished on the authorized agent of Thread on May 1, 2019. No one has ever appeared or answered on behalf of Thread.  A clerk's entry of default was docketed on June 28, 2019.  After ten months of no activity in this litigation, a show cause order was

1

issued by the Court requiring Wright to inform us as to why the case should not be dismissed for failure to prosecute. That inquiry apparently disrupted plaintiff's counsels' somnolence, because a brief five days thereafter a Motion for Default Judgment was filed with an accompanying brief and affidavit. Default judgment was entered on January 22, 2021, granting in part the relief sought while denying other parts.

In summary terms, the default judgment denied Plaintiff's prayers for injunctive relief that would have required monitoring and supervision of Defendant's compliance with certain specified web content guidelines and with the ADA but granted a permanent injunction prohibiting Thread from operating its website unless and until it complied with the ADA Requirements regarding the screen reader device. No award of money damages was sought by Plaintiff or awarded as part of the default judgment. The motion seeking an award of attorneys' fees now before the court was filed one month after entry of final judgment.

The default judgment entitles Plaintiff as the prevailing party to an award of reasonable attorneys' fees as well as reimbursement of litigation expenses and costs, pursuant to 42 U.S.C. § 12205. The fees petition submitted on behalf of Plaintiff reflects work performed by two attorneys (Benjamin Sweet and Alison Bernal), both of whom are affiliated with a law firm based in Santa Barbara, CA, and Pittsburgh, PA. Inexplicably, neither lawyer had ever filed an appearance in this case again until prompted to do so by the Court in connection with our denial of their motion for fees, allowing them leave to refile the motion within thirty days, if appearances were filed in this case. So prodded, their appearances were filed shortly thereafter.

The attorneys seek an award of fees at the hourly rate of $500, which rate they represent reflects a voluntary reduction from their customary rates ($600-$650/hour). They acknowledge that that rate is on the high end for similar civil rights cases within the Seventh Circuit (rather than California), which they peg as typically falling within the range of $400-$450/hour. The total number of hours claimed by Plaintiff's counsel for their work in litigating this case is 42.5 hours. Applying the lodestar method, Plaintiff's counsel seek an attorneys' fee award of $21,250, plus an additional $724.34 as reimbursement of their costs, for a total award of $21,974.34.

## Discussion

Under the lodestar method for collecting attorney's fees, "[t]he fee claimant bears the burden of substantiating the hours worked and the rate claimed." *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997). This requires the claimant to first identify a reasonable number of hours worked and then multiply those hours by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Our review of Plaintiff's attorney fee request raises concerns, both as to the amount of the fees and the specific litigation tasks engaged in by counsel to achieve the resulting default judgment. This was about as simple and straightforward a case as could be imagined. Accepting their self-description as accurate respecting their "extensive experience" in this area of legal practice (per their Memorandum in Support of … Attorneys' Fees, etc.) and acknowledging that the ADA is a sufficiently "complex" statute to sometimes present novel and difficult issues for litigation, this particular case actually

was not such a complex and challenging matter. We find nothing about Plaintiff's claims or theories of liability as incorporated in the complaint, never mind throughout the litigation which culminated in an almost immediate entry of default and default judgment, that warrants significant investments of attorney time and effort or otherwise justifies a fee in the range requested here. Indeed, counsels' expertise in this area of the law should have allowed them to get this case filed and resolved with only modest outlays of effort and time.

In terms of specifics, we begin by noting that this case is one of seventeen nearly identical lawsuits brought by Plaintiff against various defendants, all filed in our district at about the same time and all advancing ADA claims similar to those lodged against Thread. (We have not searched the dockets of other district courts to determine if similar bulk filings have been made elsewhere, but we assume that it is likely that they were). These seventeen complaints appear to be "cut and paste" versions of common legal claims, for which the facts pertaining to each individual defendant have been tailored in minor ways, that is, only to the extent necessary to reflect the nature of the specific business of the named defendant. Those individualized details are contained in a single paragraph within each separate complaint. Thus, we see no evidence of any special crafting or specific research respecting the complaints in any of the seventeen lawsuits, including this one.

Plaintiff's counsel has recorded in the time records approximately five hours for preparation of the complaint. We believe five hours for the copying of a form complaint that was essentially a mirror image of all the others is excessive. Perhaps this time

4

assessment reflects an amortization of the overall expenditure of time spent drafting all the complaints then divided into each of the seventeen cases and charged as fees for each individual case, but, if that was Plaintiff's counsels' approach, we have not been so informed.

    We note as well that a portion of the requested fees were incurred in the process of conducting discovery. The description of billable time set out in the Declaration of Benjamin J. Sweet reveals, for example, that on May 20, 2019, "AMB" (presumed to be Alison M. Bernal, also a partner at Plaintiff's counsels' firm) invested five separate periods of time, along with one increment of time for work performed by Attorney Sweet. Together this time totaled 10.3 hours for tasks related to the preparation of discovery requests (interrogatories, document requests, deposition notice of 30(b) expert, ESI preservation).

    Conducting discovery-related tasks immediately following service of the complaint on Defendant and before the time had run for Defendant to answer or otherwise respond to the claims against it was premature at best. Since Defendant never did answer or otherwise respond to Plaintiff's claims against it, the time spent crafting discovery requests was unnecessary. Indeed, Plaintiff's counsel notes their frustration with Defendant's unresponsiveness, writing in the memorandum in support of the fees request that "[i]nstead of participating, Defendant has ignored this case, refused to participate in the litigation, and required Plaintiff to seek Default Judgment. Due to the non-appearance of Defendant, Plaintiff has expended significant time and effort on obtaining a Default Judgment through preparing its Motion, Memorandum in Support,

and now this Motion for Fees." Dkt. 22 at 4.  Given Defendant's complete refusal to participate in this case, expending significant time to formulate discovery requests strikes us as unreasonable.  The best that can be said for this investment of time was that it was premature.

We further note from our review of the fees request submission by Plaintiff's counsel that reimbursement is sought for an additional 1.2 hours accrued from the joint discussion between them.  Sometimes such collaborative efforts are necessary and worthwhile, but here the subject of these discussions was the default filing, the simplest kind of matter to submit to the Court.  It is difficult to imagine why this topic required time expenditures by the attorneys on four separate days.

Finally, we question counsels' overall diligence in managing this litigation.  It seems clear that the case never received their sustained, focused attention and proactive management, perhaps because it got lost in the shuffle of sixteen other cases.  Twice the Court was required to prod Plaintiff's counsel into action:  first, through a show cause order directing them to explain why the case should not be dismissed for failure to prosecute after the entry of default had been left unattended for several months; and a second time when the Court was required to order counsel to do the basic task of getting their appearances on file if they wished to have their fees petition considered; this should have happened when the case was first filed, not when it is about to be closed.  These are small tasks ordinarily, but when left unattended to, it signals a level of inattentiveness that casts doubt on the quality of the attorneys' overall efforts.  In determining the reasonableness of attorneys' fees, the court can and should consider whether the efforts

made by them were diligently pursued and effectively performed, that is to say, whether the lawyers can fairly be deemed to have earned the fees at the requested rate of $500 per hour.

For the reasons explained above, we believe that a downward adjustment in the amount of fees to be awarded to Plaintiff's counsel is appropriate.  Accordingly, we shall reduce by half the time claimed for preparing the complaint (5 hours, reduced to 2.5 hours), and we shall disallow the expenditures of time for discovery (a reduction of 10.3 hours) and reduce by half the time spent by the lawyers for the joint discussion of default judgment procedures (1.2 hours, reduced to .7 hours). These adjustments reflect a total reduction of 13.5 hours from the amount of attorneys' fees sought.  No reduction is necessary with regard to costs, so they will be reimbursed in the amount requested: $724.34.  Though there are good reasons the Court could invoke to justify a reduction in the hourly rate of $500 sought by Plaintiff's counsel to reflect their lack of diligence and attentiveness in managing this litigation, in light of the other downward adjustments outlined above, the $500/hourly rate shall not be reduced.

To summarize, the amount of attorneys' fees awarded by the court is $14,500.00 (computed on the basis of 29 hours times $500) and the award of costs is an additional $724.34, for a total award of $15,224.34.

IT IS SO ORDERED.

Date: _____2/14/2022_____

_____*Sarah Evans Barker*_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alison M. Bernal
NYE STIRLING HALE & MILLER LLP
alison@nshmlaw.com

Benjamin J. Sweet
NYE, STIRLING, HALE & MILLER, LLP
ben@nshmlaw.com

Noah Cartwright Thomas
CHAPMAN LAW LLC
noah@chapmanlaw.com